Morning, Your Honors. James Harris for Appellant Stearns Bank. Now that the parties agree that Benson applies retroactively, the two simplest bases for reversal are, first, that Benson compels the conclusion that the claim as presented to the jury by plaintiff comes within FIREA's jurisdiction bar. And second, Benson also compels the conclusion that Instruction No. 18 was incorrect as a matter of law. And I'll discuss those two issues first. Benson is dispositive because it teaches not only that claims directly against the FDIC or the failed bank are subject to FIREA exhaustion, it teaches that claims that are functionally against the FDIC because they're based on the FDIC's conduct are likewise subject to exhaustion. And secondly, Benson teaches that the term claim is a term of art. And it refers, within the meaning of FIREA, not simply to the situation where the underlying act of misconduct, which the plaintiff focuses on, was committed by the FDIC. It also deals with the situation where the injury for which the plaintiff seeks recovery was caused by the act of the FDIC. That's exactly what Benson holds, and that's exactly what we have here. In Benson, the plaintiff tried to avoid FIREA's jurisdictional bar the same way the plaintiff did here. The plaintiff focused on the purchasing bank's supposed post-purchase conduct and said that's outside FIREA. But that didn't work because the injury for which the plaintiff sought recovery there had occurred previously. I'm going to have you just pause here for a second. What relief are you seeking here today? Well, the most fundamental relief we're seeking is the total vacation of the judgment and entry of judgment for Stearns. And we think because there's no subject matter jurisdiction that that's appropriate relief. Alternatively, because the instruction was incorrect... You say there's no subject matter jurisdiction because... Because the claim as presented to the jury sought to recover only for damages that were occurred in September of 2009 during the FDIC's tenure prior to the purchase of the loan. And according to Mr. Shaddix's testimony, according to the plaintiff's testimony, as the direct result of the FDIC's failures to fund. And that not Stearns' failure. Right. Right. That Stearns was not part of the contract, had no contract. There are two arguments that we're making. With respect to FIREA jurisdiction, the argument that we're making, we are making the argument that Stearns cannot be liable for the breach of contract because when you look at the contracts, Stearns never assumed the lender's obligations. That's one argument. And let's, just for a minute, if we could take that argument. Sure. Because I'm a bit confused by the trial strategy here. Because that is one of your claims that Citrus has no contract with Stearns. That appears to be a legal question. Yes, absolutely. And so I'm perplexed as to why you wouldn't have filed a 12B6 motion at the appropriate time or a motion for summary judgment or a Rule 15 motion. It's inexplicable to me, but hopefully you have a reason. Well, frankly, Your Honor, I wasn't trial counsel. I don't care what's the reason. I mean, I don't know if you were trial counsel or not. You're here now, and we need an answer. Simply, the motion was not made. The point was pushed at every single opportunity. It was pushed with respect to other opportunities. It was pushed with respect to instructions. It was pushed in the contentions of law and fact that were submitted before trial. It was pushed in the pretrial brief. But it was not made in a summary judgment motion. And in retrospect, I think a motion like that would have had to have been granted. Well, did you ask for an instruction to that effect? We asked for an instruction with respect to the firea issue. We asked for an instruction that Stearns couldn't be held liable for the FDIC's conduct, and that instruction was not given. And that's one independent ground for a new trial. With respect to Stearns. Could you just slow down a little? I'm sorry. I just see how you're talking so quickly. You're not the first judge who's ever told me that. I bet. With respect to the instructions as to the contract, if you look at page 136 of the appellant's excerpts of record, the stipulated facts, which were part of the instructions, foreclose any liability against Stearns for breach of contract. The stipulated facts that were part of the instruction first say that Rescon, they refer to as FDN, but Rescon agreed to purchase all of the FDIC's interest in the loans. Stipulation of fact 12 is Rescon acquired all of the interest of the FDIC in the loan. And stipulation of fact 14, again on page 136, is that Stearns is the servicer of the loan. So the import of those instructions, which were stipulated, is that the loan was owned entirely by Rescon. Stearns was not the owner of the loan. Stearns never assumed the lender's liabilities, the lender's obligations under the loan. As I understand it, the specific act that was alleged to form the breach of contract was the failure to draw down on a request, I guess it's request number 18. Yes. And that was an act that Stearn did. And that's why, that's correct. That's the allegation the plaintiff made. And that's why I think the case is subject to the FIREA jurisdictional bar. What the plaintiff has done here is focus on an act of Stearns that occurred after the purchase that conceptually could be the basis of independent misconduct. But the damages which they seek for that act are damages that occurred in September of 2008, six months earlier, when the market was good, before the collapse of Lehman, as the result of FDIC's earlier non-funding. Explain that to me using the record. How is that true, that the damages they sought were for a prior period? I thought it was the failure to fund the request number 18 that caused them to have problems with continuing to develop the land. No. No, no. The damage testimony that they put on all came in through their principal, Mr. Shaddox. And it's contained, we set it all out in our appendix, I think it's pages 191 to 201. And Mr. Shaddox's testimony was that he that day at trial was asking for $9 million and some odd in damages. That's page 198. And the way he computed that figure was he assumed that the homes would have been sold in September of 2008, during the tenure of the FDIC, before the market crashed. And he went through an elaborate set of calculations showing how, at that time, if they had completed the project, if FDIC had funded, they would have completed the project in September of 2008 and made a substantial profit. That's the only damage claim that was presented to the jury. And what Benson teaches is that even when a plaintiff focuses on an act of misconduct that occurred post-purchase, if the injury for which the recovery is sought is pre-purchase and is the result of the FDIC's actions, Benson squarely holds that that claim comes within FIREA's jurisdictional bar. But the jury instruction here was very confusing. Do you agree? That's, at a minimum, it's very confusing, yes. Okay. All right. But you didn't object. Well, we did object. Well, no. It's not recorded. But under the futility exception, the objection is preserved because we know three things. And you didn't even try to get clarification. I'm trying to understand your futility, but you agree with me there was no objection. You agree with me that you didn't seek to get clarification. What we have was. Yes or no. There was no objection that was recorded on the record. Okay. What we have is Stearns, the defendant's proposed a correct instruction. That instruction was not given by the judge. The judge on the record said it understood Stearns' and Rescon's position with respect to FIREA and that in the judge's view that position had been preserved. And so then you silence. At the conclusion of the instructions, Congress? Yes. Well, that's right. But let me give you a case that's exactly on point. It's on the. While you look for that, let me just ask you, if we review the jury instruction for plain error, I'm curious your position on how it impacted a substantial right here. It sounds like that's what you were talking about. I'll answer in two parts. The case that I cite you to is the Medtronic case, which is 526, I believe, F3rd 487. And it sets out the futility exception, which says if the party argued the matter, if it's clear from the record that the court knew the party's ground for disagreement and the party offered a correct instruction, the error is preserved. And that was even in a case where the only thing that was recorded there on the record was just as here where the counsel said, I think that's fine at the end of the conference. Because what that means is. Excuse me, counsel. Yeah. So I think you're saying that maybe the off-the-record discussions of the instructions might have, there was perhaps argument about them. However, we have a transcript where the court says, all right, now the instructions, are they acceptable once again to the defense? I never got an answer from the defense. Are the instructions acceptable to the defense? And Ms. Davis says, yes, Your Honor. Okay. Is it also acceptable? And so what we can see, what we can look at, is that the instructions that were given were acceptable. And what that means, and the Medtronic case explains a remark like that in context. When you don't have the entire conference recorded, what counsel is saying there is basically subject to the prior objections, I have no further objections. Well, that's not what was said. I know that's not what was said. I'm not sure that's your best argument there. I mean, it's basic, you know, rules and strategy you have to object to any obstruction. Instruction, I know you're doing the best that you can. Now, it looks like the Federal rules, though, the recent change says that instruction can be reviewed for plain error under Federal Rule 51. That's why I'm asking you. Yes, there was plain error. Okay. Tell me why. The error is plain because Benson and every other case that's ever been decided under FIREA with respect to a similar issue has said, as a matter of law, the purchasing bank cannot be held responsible for the inactions or actions of the failed bank or the FDIC. And if you look at the entire record here, Plaintiff's case was premised almost exclusively on trying to make Stearns and Rescon liable for the FDIC's actions. As I was saying, the damage theory is exclusively based on the FDIC's actions. There's testimony from Mr. Shaddix that the FDIC decimated the project. There's correspondence from Mr. Shaddix to the effect that the FDIC decimated the project. And all of the FDIC's actions occurred before the market crash. And Stearns got involved at the last minute after the market had already tanked. And if you look at the Plaintiff's own documents, at that point, they couldn't complete the project for the undisbursed funds. They couldn't complete the project on time. They had no prospect of sales. They had had three units on the market without success for a year. And they had slashed their prices by 75%. They still couldn't sell. If they had completed and sold the project, they would have had a huge loss. So the reason why you talk about trial taxes, the reason why Plaintiff focused on the FDIC's damages in September of 2008 is that was a big number. And if it could get the jury to award that big number against Stearns, they'd get a big recovery. If the Plaintiff focused on the lost profits they could have expected in May of 2009, that would have been a less than zero number. So they made a tactical decision to go after the big number. Let me ask you, because your time is limited, because this point is important, I think, for us to figure out how to proceed. If we do agree with you on the contract point, are we able, are we, is this court able to order judgment in your favor or can you only get a new trial because you didn't make a Rule 50 motion and it seems like we may lack jurisdiction to grant judgment in your favor if we agree with you based on that NICO holding corporation case. Well, subsequent cases have made clear that when an issue, even if it was not exhausted, and I'll take that as an assumption, I'm not conceding that, if an issue is a pure question of law based on interpretation of a contract, we cited a case law that says you have the authority to review that because it's a pure legal question that's not dependent upon the sufficiency of the evidence. And that's exactly what we have here. We have first the instructions that preclude liability on a contract theory against Stearns. And then we have the contracts themselves in evidence. And it's clear from those contracts that Stearns never entered into an agreement under which it assumed the lender's obligations. So under the case law, you absolutely have the authority to review that pure issue of law. What's the case law? It's the Go Daddy case. And also aftermath records. Are there any further questions at this point? No. Thank you. Good morning. My name is Everett Skillman. I represent Citrus, El Dorado. May it please the Court. The first argument presented by my esteemed opponent has to do with Ferea. However, the underlying premise of his argument is a factual issue. He's saying that the reason Ferea applies is because the damages occurred before Stearns got the loan. The jury is the one who determines when the damages occurred. Here we did provide substantial evidence showing that Citrus was deprived of expectation interest in a completed project as a result of Stearns' breaches. That is not covered by Ferea. And this Court stated in Benson, which is the controlling law here, it is retroactive, stated in Benson at page 1216, the acts of the purchasing bank might be related to the acts of the failed bank, but Ferea's jurisdictional bar applies when a claim relates to the acts of the failed bank. Right. And I understand your opponent's argument to be that the damages that were claimed were as a result of the FDIC's actions or the failed bank's actions. How do you respond to that? My opponent is making a factual argument that was made at the trial court level. It's essentially a closing argument, Your Honor. He has to necessarily establish as a matter of law that all of the damages occurred before Stearns got the loan. And there was ample evidence to show that there were damages that occurred as of the time of Stearns' breach. Does one of the special verdict forms cover when the damages occurred? No. It says who is responsible for the breach. It says Stearns is 100 percent responsible. If Stearns wanted to add Heritage Bank, if Stearns wanted to add the FDIC to that verdict form to show that some of the percentage of fault belongs to those entities, they were perfectly free to do so, but they failed to do so. Well, they did add, I guess, on special verdict D, to the question, what are Citrus L. Dorado's damages caused by the negligent interference with contractual relations? And then they were asked to allocate it, and they put 100 percent Stearns Bank and 0 percent FNBN Rescon. So you're saying they could have also added FDIC as a third choice? Yes, Your Honor. That's a common practice that occurs in the California courts. For example, in a personal injury case, the defense often adds, for example, the employer. And under Prop 51, if fault is ascribed to the employer, even though the employer is immune under the work comp laws, the jury can still apportion fault to that immune party. That's the default case, Your Honor. What about Benson? What do you say about Benson? Benson says you don't look at the acts of the failed bank, per se. You look at whether the claim is attributable to the failed bank. For example, in Benson, that was a pure vicarious liability case. J.P. Morgan was being sued for Wamu's wrongdoing. That's not what we have here. Stearns Bank is being sued for Stearns' wrongdoing. Tell us what the wrongdoing was. The wrongdoing was the failure to fund draw request number 18. Even though there was ample, there was a 91 page, 91 pages of support for that draw request. Yes, all of the conditions precedent for Stearns Bank to fund that draw request were satisfied. Well, that was a question, wasn't it? A question whether those conditions were satisfied. A legal question. It is not a legal question, Your Honor, with all due respect. It was a factual question as to whether there was sufficient evidence to support the five elements of breach of contract. And we did support that, all five elements. As to the first element, whether Stearns is a party, we've got the FDIC's letter saying we sold your loan to Stearns. We've got Christopher Roefort's February 23rd email saying it's our intention, i.e. Stearns, to fund a draw request. We've got the letter from the chairman of the board of Stearns saying we acquired your loan. Stearns Bank acquired your loan. We've got Stearns in the notice of default saying we are going to foreclose. This is signed by Judy Herbig. She's an employee of Stearns. It's on Stearns Bank letterhead. And this notice of default says nothing about FNBN. We have Stearns rejecting the settlement offer saying that Norm, who's Norman Skalicki, the chairman of the board of Stearns, saying we're not going to look at your settlement offer again. We have Stearns saying we want you to put Stearns as the mortgagee and as the additional loss payee on the insurance policy. Your Honor, there was ample – and we did that. My client did that, Your Honor. And, Your Honor, there was ample evidence on all of the essential elements of the breach of contract claim, including the first element, including the damages element, including the satisfaction of conditions precedent, including the breach element. What evidence is there in the record that supports a conclusion that Citrus had an economic relationship with a third party? My client's managing member, Scott Shaddix, testified at trial as to what was going on in the project. He testified that he had difficulty trying to sell the houses because he couldn't complete the houses. He had difficulty with relationships with the subcontractors and material suppliers because all of a sudden Citrus's creditworthiness is called into question because the bank won't fund the draw request. And those difficulties, which were all caused by Stearn, resulted in – actually constituted the damages that resulted from Stearns' breach, Your Honor. With regard to the failure to file a 50A motion, Your Honor, the U.S. Supreme Court stated in at least two cases, the Unitherm case – But who – but I'm still trying to figure out, who is the actual third party that you – that your client had a relationship with? I think you have to have an actual third party. There are several groups of third parties, Your Honor. Material suppliers, subcontractors, the consuming public, those people who want to buy houses. Wait, these are – so these are the subcontractors and other people you owed money to, your client owed money to them at that time? They not only – they owed money to them, but they were also – Ongoing workers on the projects. But they also had further work to do, Your Honor, and there was a possibility that they would not work if they see that there's no money for them to collect at the end of their work. So there was damage to those economic relationships. Does it have to – I'm sorry. What evidence in the record is there that Citrus had a contract with Sterns? I'll show you. There is the letter. Is it the construction loan agreement? There is the letter that was signed by the chairman of the board of Sterns, Norman Scalicchi, saying, Sterns Bank acquired your loan from the FDIC as part of a pool of loans formerly held by First National Bank of Nevada. That's at page 871 of the record, volume 5 of the appellant's excerpts of record, signed by Norman Scalicchi. It said it acquired what? It said, Sterns Bank acquired your loan. This is addressed to Citrus El Dorado. Acquired your loan from the FDIC as part of a pool of loans formerly held by First National Bank of Nevada. You're saying that supports that they entered into a contract with them because they acquired the loan? I mean, they were the servicers of this loan, I guess, after the FDIC took it over. Is that not right? Yes, sir. Let me clarify what Mr. Harris said. As Citrus El Dorado went to trial, the theory was that there were actually two parties in the position of lender, FNBN and Sterns. The opposing counsel agreed with them that FNBN was in the position of lender. They disagreed that Sterns was in the position of lender. Therefore, you enter into stipulation as to FNBN and you litigate as to Sterns. That is what happened. That is what's set forth in the complaint. The reply brief talks about the Dream Games case, Your Honor, but there's a difference here. In Dream case, the secondary liability theory was completely omitted from the complaint. However, in the present case, paragraph 18 of the Third Amendment complaint says, Sterns Bank assumed all the rights and obligations of the underlying construction financing agreement pursuant to its arrangement with That was in the complaint. They had fair notice of it. That was the theory that was litigated at trial. The stipulation only dealt with part of the case. When you go to trial, you stipulate to what you can stipulate to, and whatever you can't stipulate to, that's what you litigate. And that's exactly what happened here. The stipulation does not preclude liability against Sterns. There's no item, there's no item in the stipulation that says Sterns is not the lender. That is just flat out not in the stipulated facts. There was additional evidence, Your Honor, as well, paper evidence showing that Sterns is a lender, Your Honor. The FDIC, on February 13, 2009, they sent a letter to Sterns saying, FDIC, as receiver for First Heritage Bank, has sold your loan to a new lender. All payments are to be made to Sterns Bank.  It seems like Citrus's contractual relationship was with the FBNBN Rescon because Sterns Bank was hired by FBN to service the loan. I'm trying to figure out how, then, they become in a contract with your client. They voluntarily assume FBNBN's obligations, Your Honor. Sterns Bank was the managing member of... Their role was that of a servicer of the loan. You agree that they never entered into any formal contract with your client. There's no piece of paper that has signature lines for both Citrus and Sterns, correct? However, under California law, we cited the Specchior case. We cited 1589. We cited the Melchior case, which says that, yes, you can have a substitution of a new party into a contract. When you accept the benefits of the contractual relationship, you have to take the burdens as well. You have to discharge the obligations of that contractual relationship as well, and that's what they're doing here. They were seizing upon the contract right of foreclosure in the contract. They were seizing upon the contract right of being an additional name insured on the policy. They were seizing upon the right to demand, and we questioned whether that is even a right, but they are saying it's a right, Your Honor, to demand that mechanics liens be cleared, that property taxes be paid early, and so on. They're seizing. This is a procedural question, though, on this. So as I understand it, Sterns didn't make that there is no contract argument in its Rule 50 motion, and I'm not clear whether they can take that position now, whether it's preserved. Your Honor, they did not ask the district court to vacate the contract verdict in their 50A or 50B motion. They just argued insufficiency. They were arguing the evidence, evidentiary matters, as opposed to legal matters. Your Honor, I see that my time is almost up. You can answer the question. Yes, Your Honor. In their 50A and 50B motions, they addressed the sufficiency of the evidence in the tort cause of action only. They did not address the essential elements, the five essential elements of the breach of contract cause of action. That's how you make a 50A and 50B motion. They didn't do that. Therefore, pursuant to Unitherm and Ortiz, they have waived the right to appellate review of the contract verdict. There are no further questions, Your Honor. Yeah, I do have one further question. The jury instruction, you think the jury instruction was correct? Your Honor, I think the jury instruction, it was their defense. They had the obligation to pro- I understand that, and I've asked them some very pointed questions about that. I'm asking you if you think the jury instruction was correct. Your Honor, we think the jury instruction was unnecessary because we don't think the evidence warranted a FOREA instruction at all. Secondarily, we think if they wanted a FOREA instruction, they should set forth a rule statement that comes from FOREA. They didn't do that. Do you think ultimately what the judge ended up, how he amended it, do you think that that was correct? I think that Judge Carter did the best he could by adding the word claim. So you can't give me a yes or no answer? Well, the answer to your question is, Your Honor, I don't believe a FOREA instruction was even necessary. If it was in there, it was the obligation of Stearns to have a properly worded jury instruction. I don't believe the jury instruction sets forth a rule of law, Your Honor. All right. Thank you. I think you did have a minute or something. Deputy Park, did he have time? Did he have time?  Thank you very much, Your Honor. Thank you. Let me make a couple of points very, very quickly. With respect to the FOREA argument, I urge you to look at pages 191 to 201 of the appellant's excerpt of the record. That is Mr. Shattuck's testimony about damages. It's all the damages testimony that there is. It's all focused on September 2008, and as I explained, there's a good reason why they took that litigation tactic. And because all those damages were incurred and measured prior to the purchase on FDIC's watch under Benson, the claim is barred. With respect to whether in the alternative you can look at the breach of contract question, the aftermath records case says at 621 F3rd at 962, and I'll try to read this slowly, an argument that the contracts are unambiguous raises an issue of law that does not rest on the sufficiency of the evidence to support the jury's verdict, continuing to quote, such an issue of law need not be raised in a motion for judgment as a matter of law to preserve the issue for appeal so long as it is raised in some form before the case goes to the jury. This is purely a question of law. You look at the contracts. You look at the you cannot conclude that Stearns became a party to any contract that imposed the lender's obligations on it. So I think it is fair to say. Then how did it have the right to foreclose? It didn't have the right to foreclose. If you look, everything it did with respect to foreclosure was in its capacity as servicer. If you look at the cross-claim for foreclosure and if you look at the foreclosure notice, both of which are in the record, they were in the name of FNBN. They were not in the name of Stearns. Stearns simply sent that letter in its capacity as servicer. And with respect to this accepting the benefits of the argument, of the agreement argument, that issue was not tendered at trial. It wasn't part of the instructions. It wasn't part of the special verdict. If it had been part of the case, if we had known that that was an issue, we would have put on evidence that. I think there's a problem. I mean, you said you weren't the lawyer who tried this case. Correct. So I think there's a whole host of procedural glitches in this case that maybe you would have tried it differently had you tried it. But I don't know. It's problematic how anything could be cured. I mean, some of these things you're talking about could be cured now. Well, with respect to the accepting the benefits of the contract argument, they're urging that as an alternative basis for affirmance. And my point is they didn't raise that as an issue. They didn't get instructions on it. It's not part of the special verdict. The special verdict simply asked whether there was a contract between the plaintiff and Stearns. And the jury said yes. So they found sufficient evidence that there was a contract. And how do we upset the jury finding as to that? Because if you look at the contract, it's not upsetting the jury finding. That's a matter of law. If you look at the contracts and you also look at the stipulated facts and instructions, there is no agreement which Stearns entered into which imposed upon it the lender's obligations. It simply assumed the obligations of the loan servicer. At page 136 of the record, in the instructions, it says, and I urge you to read page 136, stipulations 11, 12, and 14. FNBN acquired all of the interests of the FDIC in the loan. Stearns is the servicer of the loan. And then if you look at the agreements themselves, the only agreement Stearns entered into. So why is the jury finding Stearns 100% responsible? I think there must have been evidence to that effect. I think that was a moral judgment. I don't think that had anything to do with respect to the fundamental question of whether there is a sufficient basis in the contracts for concluding that Stearns entered into a contract. All right. As a matter of law, that conclusion simply doesn't work. All right. Thank you very much, counsel. Thank you. You've gone over substantially. Citrus Eldorado v. Stearns Bank will be submitted.
judges: Noonan, Wardlaw, Murguia